**UNITED STATES JUDICIAL PANEL**
**on**
**MULTIDISTRICT LITIGATION**

┌─────────────────────────────┐
│ **FILED** │
│ **Feb 05, 2026** │
│ CLERK, U.S. DISTRICT COURT │
│ EASTERN DISTRICT OF CALIFORNIA │
└─────────────────────────────┘

**IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH
LITIGATION**                                          MDL No. 3126

**TRANSFER ORDER**

**Before the Panel:**[*]   *Pro se* plaintiff in the action listed on Schedule A (*Jones II*) moves under Panel Rule 7.1 to vacate the order conditionally transferring the action to the District of Montana for inclusion in MDL No. 3126.  Defendant AT&T Inc. opposes the motion and supports transfer.

After considering the parties' arguments, we find that the action involves common questions of fact with the actions transferred to MDL No. 3126, and that transfer under 28 U.S.C. § 1407 will serve the convenience of the parties and witnesses and promote the just and efficient conduct of the litigation.  The actions in MDL No. 3126 involve common factual questions concerning a cluster of data breaches that occurred on the Snowflake cloud platform from approximately April through June 2024, when a threat actor allegedly exfiltrated the personal information of over 500 million consumers and employees, including AT&T cellular customers. *See In re AT&T Inc. Cellular Customer Data Sec. Breach Litig.*, 753 F. Supp. 3d 1368, 1371 (J.P.M.L. 2024).   In centralizing the actions, we observed that the breach of AT&T data on the Snowflake cloud allegedly involves metadata for calls and texts made by AT&T cellular customers and certain others using the AT&T network from May 1, 2022, to October 31, 2022, and, for some customers, records from January 2, 2023.  *Id.* at 1372-73 n.6.  The *Jones II* action involves overlapping factual issues concerning the breach of AT&T data on the Snowflake platform – in particular, the breach of text messaging and call data from May 2022 to October 2022 and in January 2023.  Notably, plaintiff filed a substantially identical action against AT&T in late 2024 that we previously transferred to the MDL (*Jones I*).[1]  Transfer will facilitate the efficient conduct of overlapping pretrial proceedings in *Jones I* and *Jones II*, as well as the other actions in the MDL, and avoid the risk of inconsistent rulings.

---

[*]  Judge Karen K. Caldwell, Judge Matthew F. Kennelly, and Judge David C. Norton did not participate in the decision of this matter.

[1] *See Jones v. AT&T, Inc.*, No. 24-3368 (E.D. Cal. filed Dec. 2, 2024).  The conditional transfer order transferring *Jones I* to the District of Montana became effective on January 2, 2025.  *See In re Snowflake, Inc., Data Sec. Breach Litig.*, MDL No. 3126, ECF No. 280 (J.P.M.L. Jan. 2, 2025). *Jones I*  was docketed in the transferee court as Case No. 25-00001.

-2-

In opposition to transfer, plaintiff principally argues that (1) *Jones II* concerns breaches related exclusively to AT&T, in contrast to Snowflake, thus eliminating any common factual questions with the MDL; (2) the damages in *Jones II* are plaintiff-specific; (3) he opted out of the class settlement in the MDL; and (4) transfer would unfairly delay the resolution of his claims and cause inefficiency. These arguments are unpersuasive.

First, plaintiff's assertion that the MDL does not include the breach of AT&T data alleged in *Jones II* is wrong. Our initial transfer order clearly states that the MDL includes actions against AT&T and specifies that the AT&T incident at issue in the *Snowflake* MDL is the one announced by AT&T in July 2024 "involv[ing] metadata for calls and texts made by AT&T cellular customers . . . from May 1, 2022 to October 31, 2022, and, for some customers, records from January 2, 2023." *See In re AT&T Inc. Cellular Customer Data Sec. Breach Litig.*, 753 F. Supp. 3d at 1373-73 & n.6. These specific data sets are at issue in *Jones II*.

There is no basis for excluding *Jones II* from the MDL based on the complaint's exclusive focus on AT&T as the alleged wrongdoer, the omission of allegations concerning Snowflake, and the inclusion of additional alleged data breaches spanning 2021-2024. Section 1407 does not require a complete identity of common factual issues or parties when, as here, the actions arise from a common factual core. *See In re Valsartan Prods. Liab. Litig.*, 433 F. Supp. 3d 1349, 1352 (J.P.M.L. 2019). The asserted differences raised by *Jones II* also are undercut by the fact that, by plaintiff's own account, *Jones II* raises the same factual issues as the *Jones I* action pending in the MDL.

Second, plaintiff's individualized injuries do not weigh against transfer. The existence of individualized injuries does not negate the efficiencies gained by transfer. *See, e.g., In re Fluoroquinolone Prods. Liab. Litig.*, 122 F. Supp. 3d 1378, 1379 (J.P.M.L. 2015). Further, many of plaintiff's alleged injuries – for example, emotional distress from the breach and the increased risk of fraud – are largely the same types of injuries alleged in the MDL. Indeed, they are the same injuries alleged in *Jones I*. Additionally, like the MDL plaintiffs, plaintiff Jones seeks punitive damages against AT&T.

Third, plaintiff's decision to opt out of the class settlement does not affect transfer. We routinely transfer opt-out actions to MDLs with class settlements because of the efficiencies to be gained from the transferee court's management of overlapping actions and expertise in the issues. *See, e.g., In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, MDL No. 1720, Transfer Order at 2 (J.P.M.L. Oct. 16, 2013).

Fourth, transfer is warranted despite the alleged delay and inconvenience from transfer. Plaintiff's grievances about the temporary stay of proceedings in the MDL and the alleged lack of progress in *Jones I* are not to the contrary. All of these grievances are essentially disagreements with how to structure the proceedings in the MDL. Dissatisfaction with the course of pretrial proceedings in an MDL is not a factor in deciding whether to transfer otherwise factually-related cases. *See id.* at 2 & n.3 (transferring opt-out plaintiffs' actions over their objections concerning how the MDL was managed). Moreover, we look to "the overall convenience of the parties and

-3-

witnesses in the litigation as a whole, not just those of a single plaintiff or defendant in isolation." *See In re Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012).

Finally, we must raise an additional issue, given our serious concerns about the integrity of the record in this matter. Plaintiff's briefs misrepresent the holdings and fabricate quotations with respect to at least seven Panel decisions.[2] Additionally, two of the citations in plaintiffs' briefs appear to be fabricated.[3] The nature and number of the misrepresentations strongly suggest that plaintiff used generative artificial intelligence to draft his briefs without checking the accuracy of the information produced,[4] though it also is possible he used some other unreliable source. Regardless, plaintiff improperly submitted briefs with false legal representations. We admonish plaintiff for fabricating and misrepresenting legal authorities in his briefing. This is an abuse of the judicial process, and one which we do not take lightly.

Although *pro se* filings are held to less stringent standards than formal pleadings drafted by lawyers, all litigants (whether represented by counsel or not) are subject to an affirmative duty to conduct a reasonable inquiry into the substance of a filing before they present it to a court. This duty includes ensuring that citations and quotations are, in fact, real, as we recognized in a similar *pro se* matter last year. *See In re Snowflake, Inc., Data Sec. Breach Litig.,* MDL No. 3126, ___ F. Supp. 3d ___, 2025 WL 4007421, at *2 (J.P.M.L. Aug. 7, 2025). Any further non-compliant submissions from plaintiff may be stricken or result in additional appropriate corrective action.

---

[2] The misrepresentations and fabricated quotations, which appear in plaintiff's motion to vacate and reply brief (ECF Nos. 363 and 373), purport to be from the following: *In re Xarelto Prods. Liab. Litig.,* MDL 2591, JPML Order (Apr. 2016); *In re Plumbing Fixtures Litig.*, 298 F. Supp. 484, 495 (J.P.M.L. 1968); *In re IBM Peripheral EDP Devices*, 407 F. Supp. 254, 256 (J.P.M.L. 1976); *In re Pharmacy Benefit Managers Antitrust Litig.*, 341 F. Supp. 2d 1356 (J.P.M.L. 2004); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006); *In re Scotch Whiskey Antitrust Litig.*, 299 F. Supp. 543, 544 (J.P.M.L. 1969); and *In re Bridgestone/Firestone Tires Prods. Liab. Litig.*, 128 F. Supp. 2d 1196, 1198 (S.D. Ind. 2001).

[3] For the fabricated citations, *see* Pl.'s Mot. to Vacate at 8 (J.P.M.L. Oct. 28, 2025) (citing "*In re Xarelto Prods. Liab. Litig.,* MDL 2591, JPML Order (Apr. 2016)") and Pl.'s Reply, at 2,10 (J.P.M.L. Dec. 3, 2025) (citing "*In re Pharmacy Benefit Managers Antitrust Litig.*, 341 F. Supp. 2d 1356 (J.P.M.L. 2004)").

[4] *See Reilly v. Connecticut Interlocal Risk Mgmt. Agency,* No. 25-630, 2025 WL 1726366, at *2-3 (D. Conn. June 20, 2025) ("Artificial intelligence is known to result in . . . fictional or hallucinatory citations . . . . [B]ecause artificial intelligence synthesizes many sources with varying degrees of trustworthiness, reliance on artificial intelligence without independent verification renders litigants unable to represent to the Court that the information in their filings is truthful.") (internal quotation marks and citation omitted).

-4-

IT IS THEREFORE ORDERED that the action listed on Schedule A is transferred to the District of Montana and, with the consent of that court, assigned to the Honorable Brian Morris for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

Nathaniel M. Gorton
Acting Chair

Roger T. Benitez                              Dale A. Kimball
Madeline Cox Arleo

UNITED STATES OF AMERICA    | ss
DISTRICT OF MONTANA

I, Tyler P. Gilman, Clerk of the United States District Court for the District of Montana, hereby certify that the above and forgoing is a true copy of the original now on file in my office.
    Dated this _____ 4th _____ day of
_____ February __ 20 26 __

TYLER P. GILMAN, Clerk
By _____
    Deputy

**IN RE: SNOWFLAKE, INC., DATA SECURITY BREACH LITIGATION**

MDL No. 3126

## SCHEDULE A

<u>Eastern District of California</u>

JONES v. AT&T INC., C.A. No. 2:25−02952